UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL LOVE,<br><br>    Plaintiff,<br><br>v.<br><br>BARCELINO CONTINENTAL CORP.,<br><br>    Defendant. | Case No. 19-cv-06684-JSC<br><br>**ORDER RE: MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 42 |

Samuel Love filed suit against Barcelino Continental Corp., alleging disability discrimination in violation of the Americans with Disabilities Act ("ADA") and the California Unruh Act.[1] Before the Court is Defendant's motion for summary judgment. (Dkt. No. 42.)[2] The motion is fully briefed. (Dkt. Nos. 43, 44.) After carefully considering the parties' briefing, the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the August 12, 2021 hearing, and GRANTS the motion for the reasons explained below.

**BACKGROUND**

Plaintiff is a paraplegic who cannot walk and uses a wheelchair for mobility. (Dkt. No. 43-2 ¶ 2.) Defendant owns and operates the Barcelino's Men's Clothing Store in the Hillsdale Mall at 177 East Sailer Drive in San Mateo, California. (Dkt. No. 1 ¶¶ 2–3; Dkt. No. 10 ¶¶ 2–3.) On September 24, 2019, Plaintiff visited Defendant's store "to buy shoes and to assess the business for compliance with access laws." (Dkt. No. 43-2 ¶ 3.) He looked for a lowered sales counter,

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 7, 11.)

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1   about 36 inches high, that he could use to check out and pay, but did not see one in the store.  (*Id.*
2   ¶¶ 4, 6.)  Plaintiff saw only a higher counter, which he knew from experience was much higher
3   than 36 inches, with a lower surface directly below.  (*Id.* ¶¶ 5–6.)  The lower surface "did not have
4   a cash register or card reader," so Plaintiff concluded he "would have had to reach up to the
5   employee behind the higher counter in order to hand over my items and my payment."  (*Id.* ¶ 5.)
6   The thought of handling transactions at the higher counter "created difficulty and discomfort" for
7   Plaintiff and deterred him from making a purchase.  (*Id.* ¶¶ 7–8.)  He left without making a
8   purchase but states that he would return to the store once disability access violations are removed.
9   (*Id.* ¶¶ 8–12.)

10  Plaintiff brings claims for violations of the ADA, seeking injunctive relief, and the
11  California Unruh Act, seeking injunctive relief and statutory damages.  (Dkt. No. 1 at 4–7.)  He
12  alleges that Defendant failed to provide accessible sales counters and accessible writing surfaces,
13  thus committing an act of discrimination the basis of disability in public accommodations.
14  Defendant now moves for summary judgment.

## DISCUSSION

### I. Requests for Judicial Notice and Objections

Defendant requests that the Court take judicial notice of the parties' joint case management statement, (Dkt. No. 38), and Plaintiff's complaint, (Dkt. No. 1).  (Dkt. No. 42 at 9 ¶ 6.) Defendant additionally relies on declarations by Defendant's expert Richard S. Halloran and by Defendant's counsel, and on a photograph taken by Mr. Halloran.  (Dkt. No. 42 at 5–9; Dkt. No. 44 at 9.)  In opposing summary judgment, Plaintiff submits declarations by Plaintiff and Plaintiff's investigator Tim Wegman, and photographs taken by Mr. Wegman.  (Dkt. Nos. 43-2, 43-3, 43-4.) The Court takes notice of the pleadings, including the joint case management statement, and all the declarations submitted in connection with the motion for summary judgment which are authenticated based on personal knowledge.  *See* Fed. R. Civ. P. 56(c) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only),

admissions, interrogatory answers, or other materials[.]"); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Plaintiff objects to Mr. Halloran's declaration that, "At the site inspection, [Plaintiff's investigator Mr.] Wegman indicated agreement with Mr. Halloran's finding and opinions in this regard and [Plaintiff's counsel] voiced no disagreement with them either." (Dkt. No. 43-1.) The objection is overruled as moot, as the Court does not rely on this material in Mr. Halloran's declaration in ruling on the summary judgment motion.

## II. ADA Claims

Congress enacted the ADA "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(2). Among its many provisions, Title III of the ADA "prohibits discrimination on the basis of disability in the 'full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation' with a nexus in interstate commerce." *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 904 (9th Cir. 2011) (quoting 42 U.S.C. §§ 2000a(b), 12182(a)). To prevail on a Title III discrimination claim, a plaintiff must show that (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied full and equal treatment by the defendant because of his disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007).

Here, the first two elements are undisputed: the parties agree that Plaintiff has a disability and that Defendant owns the store he visited. At issue is only whether Plaintiff was denied full and equal treatment by Defendant because of his disability—i.e., whether he was discriminated against. This element is met if there was a violation of applicable accessibility standards (ADA Accessibility Guidelines for Buildings and Facilities, "ADAAG"). *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011). Specifically, Plaintiff contends that Defendant violated applicable accessibility standards related to sales counters and writing surfaces. As a general rule, the ADAAG requirements "are as precise as they are thorough, and the difference between compliance and noncompliance with the standard of full and equal enjoyment established

3

1  by the ADA is often a matter of inches." *Id.* at 945–46.

2  **A.  Accessible Sales Counters**

3  ADAAG 904.4 governs sales and service counters. 36 C.F.R. § Pt. 1191, App. D, 904.4.
4  There is no dispute that Defendant's sales counter has a "parallel approach," making ADAAG
5  904.4.1 the relevant standard. (Dkt. No. 42 at 6 ¶ 4; Dkt. No. 43 at 6:3-6.) ADAAG 904.4.1
6  requires as follows:

> A portion of the counter surface that is 36 inches (915 mm) long minimum and 36 inches (915 mm) high maximum above the finish floor shall be provided. A clear floor or ground space complying with 305 shall be positioned for a parallel approach adjacent to the 36 inch (915 mm) minimum length of counter.

10  36 C.F.R § Pt. 1191, App. D, 904.4.1. ADAAG 904.4 also states, "The accessible portion of the
11  counter top shall extend the same depth as the sales or service counter top." *Id.* at 904.4.

12  According to Defendant's expert Mr. Halloran, the lower counter is slightly less than 36
13  inches above the floor and almost 10 inches in depth. (Dkt. No. 42 at 6 ¶ 4.) Based on the
14  photographs taken by both Mr. Halloran and Plaintiff's investigator Mr. Wegman, it is apparent
15  that the lower counter is more than 36 inches long. (Dkt. No. 44 at 9; Dkt. No. 43-4 at 4–6.)
16  Plaintiff claims that the lower counter does not extend as deep as the higher counter, (Dkt. No. 43
17  at 6), but the photographs taken by both Mr. Halloran and Mr. Wegman clearly show the two
18  counters have roughly the same depth, (Dkt. No. 44 at 9; Dkt. No. 43-4 at 4–6, 9), and Plaintiff
19  has not provided measurements or other evidence to create a genuine dispute as to that issue of
20  fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (explaining that, on motion
21  for summary judgment, a fact is material if it "might affect the outcome of the suit under the
22  governing law"; a dispute as to a material fact is genuine if there is sufficient evidence for a
23  reasonable trier of fact to decide in favor of the nonmoving party); *see also Matsushita Elec.*
24  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("[The nonmoving party] must do
25  more than simply show that there is some metaphysical doubt as to the material facts.").

26  More broadly, Plaintiff contends that the lower counter cannot be considered a sales
27  counter and therefore the higher counter is the relevant counter for purposes of ADA compliance.
28  (Dkt. No. 43 at 6–9.) If the higher counter is the sales counter, it indisputably violates ADAAG

4

904.4.1 at 47 inches high. *See* 36 C.F.R § Pt. 1191, App. D, 904.4.1. According to Plaintiff, the lower counter is not functionally usable as a sales counter because it does not have a credit card machine or cash register; the store layout requires a salesperson to stand behind the higher counter; and a customer would need to reach the higher counter to make a purchase. (Dkt. No. 43 at 8.) This argument is speculation unsupported by any evidence. Plaintiff does not allege that he tried to make a purchase. And the complaint includes no allegations as to how salespeople interact with customers in the store. Mr. Halloran attests that Defendant's practice is for salespeople to make sales at any point on the floor using portable point-of-sale machines, such that salespeople are not required to stand behind the higher counter and customers are not required to reach that counter to make a purchase.[3] (Dkt. No. 44 at 5–6 ¶¶ 4–5.) Plaintiff does not offer any evidence, as opposed to speculation, that this was not the practice when he visited the store.

In sum, drawing all reasonable inferences from the evidence in Plaintiff's favor, Defendant has established that there is no genuine issue of material fact as to whether its sales counter complies with ADAAG 904.4.1. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson*, 477 U.S. at 248–50. There is no genuine dispute that the lower counter complies with ADAAG requirements for sales counters, and there is insufficient evidence for a reasonable trier of fact to conclude that the higher counter is the store's true sales counter. Because the evidence does not support a finding that the higher counter is where sales occur, it does not need to comply with ADAAG requirements for purposes of this lawsuit and Defendant is entitled to judgment on this claim.

**B.      Accessible Writing Surfaces**

ADAAG 904.3.3 governs check writing surfaces. 36 C.F.R § Pt. 1191, App. D, 904.3.3. Check writing surfaces are not required, but if they are provided, accessible check writing surfaces must be available between 28 and 34 inches high. *Id.* at 904.3.3, 902.3. Mr. Halloran attests that Defendant does not provide a check writing surface, as it does not accept checks.[4] (Dkt. No. 42 at 6 ¶ 5.) That statement is disputed only by Plaintiff's conclusion that "th[e] lowered surface is

---

[3] Plaintiff does not challenge this portion of Mr. Halloran's declaration. (*See* Dkt. No. 43-1.)
[4] Plaintiff does not challenge this portion of Mr. Halloran's declaration. (*See* Dkt. No. 43-1.)

more akin to a writing surface for customers to use," and thus, at 36 inches high, Defendant's check writing surface violates ADAAG 904.3.3. (Dkt. No. 43 at 8.)

As a matter of law ADAAG 904.3.3 applies only to check-out aisles, not sales and service counters. 36 C.F.R § Pt. 1191, App. D, 904.1 ("Check-out aisles and sales and service counters shall comply with the applicable requirements of 904."); *id.* at 904.3 ("Check-out aisles shall comply with 904.3."); *see Kohler v. Flava Enters., Inc.*, 826 F. Supp. 2d 1221, 1228 (S.D. Cal. 2011) ("Defendant's store does not have a checkout aisle or checkout aisles. Defendant's store only has a single sales counter with a lowered portion and a raised portion."); *Curtis v. Home Depot U.S.A., Inc.*, 2015 WL 351437, at *10 (E.D. Cal. Jan. 23, 2015) ("The tool rental counter does not appear to be a checkout aisle, as that term is commonly understood. Rather, the picture of the tool rental area depicts what would commonly be described as a sales or service counter. Sales and service counters are governed by 2010 ADAAG § 904.4, while checkout aisles are governed by 2010 ADAAG § 904.3." (citations omitted)).

Plaintiff has not offered any evidence or argument that the lower counter is part of a "check-out aisle" within the meaning of ADAAG 904.3.3. Instead, Plaintiff contends that the ADA requires accessible "writing surfaces" if such surfaces are provided, (Dkt. No. 43 at 8–9), avoiding the important context that only *check* writing surfaces must be accessible and only in "check-out aisles." Therefore, taking the evidence in light most favorable to Plaintiff, no reasonable trier of fact could find that the lower counter was part of a check-out-aisle and therefore a check writing surface. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 322–23. Defendant is entitled to judgment as a matter of law that it has not violated the ADA with respect to accessible check writing surfaces.

### III. Unruh Act Claims

The California Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f). "Because the Unruh Act is coextensive with the ADA and allows for monetary damages, litigants in federal court in California often pair state Unruh Act claims with federal ADA claims." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007).

Plaintiff's Unruh Act claim is predicated on his ADA claims. (Dkt. No. 1 ¶¶ 30–33.) "As

6

a result, the parties' arguments for summary judgment on the state law claims rise and fall with the ADA claims." *Crandall v. Starbucks Corp.*, 249 F. Supp. 3d 1087, 1122 (N.D. Cal. 2017); *see Chapman v. Pier 1 Imps. (U.S.) Inc.*, 779 F.3d 1001, 1003 n.1 (9th Cir. 2015) ("[Customer's] state claims are entirely dependent on his ADA claim.  He does not allege any conduct beyond that alleged to violate the ADA."). Accordingly, because Defendant is entitled to summary judgment on Plaintiff's ADA claims, it is also entitled to summary judgment on Plaintiff's Unruh Act claim.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED and the August 12, 2021 hearing is VACATED.

This Order disposes of Docket No. 42.

**IT IS SO ORDERED.**

Dated: August 11, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge